[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 26, 2012
JOHN LEY
CLERK

No. 11-13267
Non-Argument Calendar
_____

Agency No. A097-923-540

RANDHY ANASOFIA UGAZ,
PIER CUTILLI,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 26, 2012)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Randhy Anasofia Ugaz, a native and citizen of Peru, and her husband, a native and citizen of Italy, petition for review of the denial of Ugaz's application for asylum under the Immigration and Nationality Act.  8 U.S.C. § 1158(a).  On remand, the Board of Immigration Appeals agreed with the finding of the immigration judge that the Department of Homeland Security presented sufficient evidence to rebut the presumption that Ugaz had a well-founded fear of persecution if forced to return to Peru.  See 8 C.F.R. § 1208.13(b)(1)(i).  We deny the petition.

Ugaz applied for asylum, withholding of removal, and relief under the Convention Against Torture on account of persecution based on her criticism of a Peruvian terrorist organization, Shining Path.  The immigration judge denied relief based on its finding that Ugaz's testimony failed to establish past persecution or that she was unable to relocate within Peru.  The Board of Immigration Appeals dismissed Ugaz's appeal.  The Board found Ugaz's testimony credible, but the Board found that Ugaz had failed to prove past persecution or that she had a well-founded fear of future persecution.

This Court granted Ugaz's petition for review of the denial of asylum and vacated the order that denied Ugaz's application.  Ugaz v. U.S. Att'y Gen., No. 07-12428 (11th Cir. Apr. 29, 2008).  We held that the evidence compelled a finding that Ugaz had been persecuted on account of her political opinion and "entitle[d]

2

her to a rebuttable presumption that she [had] a well-founded fear of future persecution." Id., slip op. at 10–12. We declined to consider whether Ugaz could relocate within Peru because the Board "made no . . . findings" on that issue, id. at 12 n.3, and we remanded for further proceedings in which the Department could present evidence to "rebut[] [the] presumption" about Ugaz's fear of future persecution, id. at 12.

On remand, the immigration judge and the Board again denied Ugaz asylum relief. During an evidentiary hearing, Ugaz and the Department agreed that the immigration judge could reach a decision by "interpret[ing] . . . the current Country Reports." The immigration judge found that the 2009 Country Report and other documents submitted by the parties "prove[d] by a preponderance of the evidence that the Shining Path of the present is not the same organization as it was in the past and . . . has [no] interest in continuing to persecute" Ugaz. The immigration judge also found that there was "no indication that [Ugaz] could not avoid future persecution by relocating" in Peru. The Board dismissed Ugaz's appeal. The Board agreed with the findings of the immigration judge that conditions had changed in Peru since Ugaz had first applied for asylum and that Ugaz had "failed to show that she was unable to relocate with Peru to avoid the threat of future persecution."

Ugaz challenges the decision of the Board on two grounds. First, Ugaz argues that the Board erred as a matter of law in its determination that she could relocate within Peru. Second, Ugaz argues that the Department failed to establish that there has been a fundamental change in conditions in Peru to rebut the presumption that Ugaz has a well-founded fear of future persecution.

Ugaz's arguments require that we apply two standards in reviewing her petition. First, we review de novo any legal decision of the Board. Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir. 2007). Second, we review all factual findings of the Board under the "highly deferential substantial-evidence test" which requires that we "'affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009) (quoting Al Najjar v. Ashcroft, 257 F.3d 1262, 1283–84 (11th Cir. 2001)). We will not disturb a finding of the Board unless the "'record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.'" Id. (quoting Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc)).

On return from remand, we review only whether the Department rebutted the presumption that Ugaz has a well-founded fear of future persecution in Peru. A

presumption about future persecution may be rebutted if the Board makes one of two findings: (1) "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution"; or (2) "[t]he applicant could avoid future persecution by relocating to another part of [her] country of nationality." 8 C.F.R. § 1208.13(b)(1)(i)(A) & (B). The Department bears the burden of rebutting the presumption by a "preponderance of the evidence." Id. § 1208.13(b)(1)(ii); see, e.g., Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009).

The Board erroneously placed the burden of proof on Ugaz to prove that she was unable to relocate within Peru. In its decision, the Board overlooked the "distinction between establishing future persecution as a separate claim and rebutting the presumption of future persecution." Imelda v. U.S. Att'y Gen., 611 F.3d 724, 728 n.3 (11th Cir. 2010). An applicant who seeks asylum on account of future persecution generally retains the burden to prove the ability to relocate, 8 C.F.R. § 1208.13(b)(3)(i), but an applicant who proves past persecution and is entitled to a presumption of future persecution shifts the burden to the Department to prove the ability to relocate, id. § 1208.13(b)(1)(ii), (b)(3)(ii). Because both Ugaz and the Department introduced evidence regarding conditions in Peru and the

Board did not consider whether the Department satisfied its burden of proof, we will not review whether Ugaz can avoid persecution by relocating within Peru.

Notwithstanding the error by the Board about the burden of proving ability to relocate, substantial evidence supports the finding of the Board that conditions in Peru have changed so that Ugaz no longer has a well-founded fear of future persecution. In 2002 and 2003, Shining Path targeted Ugaz because she criticized their political activities, but the evidence submitted by Ugaz and the Department suggests that Shining Path has all but abandoned its ideology for drug trafficking activities. See Imelda, 611 F.3d at 729–30. All but one document introduced by the Department and Ugaz reports that Shining Path has restructured, downsized, and shifted most of its military activities from government animus to supporting the narcotics trade. The 2009 Country Report states that "[t]here were no reports of politically motivated disappearances" in Peru and that most activities of Shining Path were "linked to narcotics trafficking" in the "Valle de Apurimac y Ene region" and "remote coca-growing areas." A March 2010 article in Jane's World Insurgency and Terrorism reports that a "sharp rise in [Shining Path] activity against security forces in 2005 sparked concerns about a widespread resurgence," but "[b]y 2008, the group's strength" was reduced "to number in the mid-hundreds" and its members were "principally located in the Andea highland

6

regions." The article acknowledges that Shining Path still "ostensibly maintain[s] [its] ideological motivation" against the "Peruvian state" and "retains a limited urban guerrilla capacity and presence," but the article reports that Shining Path is "now focused on providing protection to drug-trafficking operations" and "most of the attacks against police are operations financed by narco-traffickers and cocaleros (coca growers)." One article introduced by the Department reports that a leader of Shining Path had "announced the suspension of military actions" and "asked the Peruvian government to enter into dialogue," and that the founder of Shining Path had "distanced himself" because its members had degenerated into "mercenaries with no ideology." Although the documents contain evidence about some political activities by Shining Path, that evidence does not compel a conclusion that the organization continues to target or retain an interest in persecuting Ugaz. See Mehmeti, 572 F.3d at 1199. The evidence about "changed country conditions in [Peru] negated the presumption that [Ugaz] had a well-founded fear of persecution" and rendered her "ineligible for asylum." Id. at 1200.

We **DENY** Ugaz's petition for review.